**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. N17L-07-018 MMJ |
| | ) | |
| v. | ) | Tax Parcel No. 10-029.20-278 C0087 |
| | ) | |
| ALICE YARBOROUGH, and | ) | <u>Sci. Fa. Sur</u> Mortgage Action IN REM |
| PRESTON WHITE, | ) | |
| | ) | Mortgage Instrument |
| Defendants. | ) | 20071019-0091702 |
| | ) | Assignment Instrument |
| | ) | 20161003-0050047 |

Submitted: March 30, 2020
Decided: May 15, 2020

Upon Plaintiff's Motion for Summary Judgment and
Plaintiff's Motion for Default Judgment
**GRANTED**

**OPINION**

Michael K. Pak, Esq., (Argued), Janet Z. Charlton, Esq., McCabe, Weisberg & Conway, LLC, Wilmington, Delaware, *Attorneys for Plaintiff*

Edward J. Fornias, III, Esq., (Argued) E.J. Fornias, P.A., Wilmington, Delaware, *Attorneys for Defendant Preston White*

**JOHNSTON, J.**

## FACTUAL AND PROCEDURAL CONTEXT

Plaintiff Bank of America, N.A., brings this mortgage foreclosure action

against Defendants Alice Yarborough and Preston White.

1

On October 17, 2007, Defendant Yarborough purchased the Property located at 208A Highland Boulevard, New Castle, Delaware 19720, Tax Parcel No. 10-029.20-278 C0087 (the "Property"). In order to finance the purchase, Yarborough obtained a loan from First Horizon Home Loans in the amount of $80,000.00 (the "Loan").[1] Yarborough executed and delivered her Mortgage (the "Mortgage") on the Property to Mortgage Electronic Registration Systems Inc. ("MERS"), as Nominee for First Horizon Home Loans.[2] The Mortgage was recorded on October 19, 2007 in the Office of the Recorder of Deeds, in and for New Castle County, Delaware as Instrument No. 20071019-0091702.[3] The Mortgage was subsequently assigned to Plaintiff on September 21, 2016.[4]

The Property is subject to assessment fees from the Burnbrae Condominiums at Wilton's Homeowners Association known as the Burnbrae Maintenance Association ("Burnbrae"). The Burnbrae Declaration of Condominium recorded on October 17, 1987 (the "Declaration") provides:

> Each such assessment shall be a continuing lien upon the unit against which it was made and shall also be the personal obligation of the owner of such unit at the time when the common expense assessment fell due....All such liens *shall be subordinate to any lien* for past due and unpaid taxes, *the lien of a first mortgage recorded prior to the date of*

---

[1] Pl.'s Supp. Br. at 2; Def.'s Ans. Br., Ex. 2 (Note).
[2] Compl. ¶ 5, Ex. E (Mortgage).
[3] Pl.'s Supp. Br., Ex. A (Recorded Deed).
[4] Compl., Ex. F (Assignment of Mortgage).

*the delinquent assessment,* and to any other lien recorded prior to the time of recording of the claim to lien.[5]

At the time the Loan was settled, payment was made to Burnbrae for monthly assessments related to the Property due for October 2007 (amounts due from October 17, 2007 through November 1, 2007), and a deposit for working capital.[6] Thus, at the time of the Mortgage's recording on October 19, 2007, Yarborough was not delinquent on assessments owed to Burnbrae.

On June 6, 2011, Burnbrae filed a Notice of Lien pursuant to Delaware Code Title 25, Section 81–316.[7] In 2015, Burnbrae obtained a judgment in the Justice of the Peace Court against Yarborough for unpaid assessments in the amount of $16,200.00. The case was subsequently transferred to this Court as Case No. N15J-04295. To satisfy the Burnbrae judgment lien, the Property was sold at sheriff sale to the current owner, Defendant White, by Sheriff's Deed dated October 19, 2016, and recorded as Instrument No. 20161019-0053724.[8] Since White purchased the Property, both Defendants have failed to make payments on the Mortgage to Plaintiff when due.[9]

---

[5] Pl.'s Supp. Br. at 1, Ex. 1 at 9–10 (Burnbrae Declaration) (emphasis added).
[6] *Id.* at 2–3, Ex. C (HUD-1 Settlement Statement).
[7] *Id.* at 3–4.
[8] Compl. ¶ 6; Pl.'s Op. Br., Ex. B (Recorded Sheriff Deed).
[9] *Id.* ¶ 7; *See also* Pl.'s Supp. Br. at 3 n. 5 (noting that White purchased the Property for $15,000, which was insufficient to satisfy the Burnbrae judgment of $16,200.00, thus no funds from the sale remained to satisfy any part of the Mortgage).

On July 10, 2017, Plaintiff brought this action against Yarborough and White for the principal sum of the Mortgage, together with interest, fees, and other expenses. On December 19, 2019, Plaintiff filed a Motion for Default Judgment against Yarborough, who has not answered the Complaint despite personal service. Plaintiff also filed a Motion for Summary Judgment against White. White filed an Answering Brief on January 18, 2020.

The Court heard oral argument on January 29, 2020. Following the hearing, White filed a Supplemental Brief in Support of Discharge of the Mortgage Lien and Plaintiff filed a Reply.

## STANDARD OF REVIEW

Summary judgment is granted only if the moving party establishes that there are no genuine issues of material fact in dispute and judgment may be granted as a matter of law.[10] All facts are viewed in a light most favorable to the non-moving party.[11] Summary judgment may not be granted if the record indicates that a material fact is in dispute, or if there is a need to clarify the application of law to the specific circumstances.[12] When the facts permit a reasonable person to draw only one inference, the question becomes one for decision as a matter of law.[13] If

---

[10] Super. Ct. Civ. R. 56(c).
[11] *Burkhart v. Davies*, 602 A.2d 56, 58–59 (Del. 1991).
[12] Super. Ct. Civ. R. 56(c).
[13] *Wooten v. Kiger*, 226 A.2d 238, 239 (Del. 1967).

the non-moving party bears the burden of proof at trial, yet "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment may be granted against that party.[14]

## ANALYSIS

Plaintiff argues it is entitled to judgment as a matter of law because: (1) White failed to comply with Delaware Code Title 10 Section 3901; and (2) the facts are not in dispute that Defendants failed to make timely payments to Plaintiff on the Mortgage.

*Delaware Code Title 10 Section 3901*

Title 10 Section 3901 of the Delaware Code provides that in all actions upon *scire facias* on mortgages:

> [P]laintiff may specifically require the defendant or defendants to answer any or all allegations of the complaint by an affidavit setting forth the specific nature and character of any defense and the factual basis therefor, by the specific notation upon the face of the complaint that those allegations must be answered by affidavits.[15]

Plaintiff filed a *scire facias* Mortgage Action with conspicuous language demanding an Affidavit of Defense,[16] and attached a certified copy of the Mortgage[17] pursuant to Section 3901.

---

[14] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[15] 10 *Del.* C. §3901(a).
[16] *See* Compl. (demanding affidavit of defenses in the Caption).
[17] *Id.* Ex. E (Mortgage).

5

White argues that Plaintiff is not entitled to an Affidavit of Defense because it failed to comply with Section 3901. White relies on *Shrewsbury v. The Bank of New York Mellon*.[18] White suggests that *Shrewsbury* should be read to include the requirement that a certified copy of the Note must be attached to the Complaint to trigger the Plaintiff's entitlement to receive an Affidavit of Defense.

Plaintiff has provided a copy of the assigned Note.[19] Plaintiff asserted that it held the Note and was entitled to enforce it. Defendants have not asserted that Plaintiff was not the holder of the Note or entitled to enforce it.

The *Shrewsbury* Court "held that summary judgment was inappropriate where a mortgage holder sought foreclosure on a property but did not produce the promissory note, claim to be the holder of the note, or claim to be entitled to enforce the note."[20] The Court finds that Plaintiff has satisfied the requirements of Delaware Code Title 10 Section 3901, as further defined in *Shrewsbury*. Therefore, Defendants must answer the Complaint by Affidavit of Defense compliant with Section 3901. Neither Defendant has complied with Section 3901.

---

[18] 160 A.3d 471 (Del. 2017).
[19] Pl.'s Op. Br., Ex. A (The Note).
[20] *JPMorgan Chase Bank, National Association v. Rivera*, 2018 WL 565300, at *2 (Del. Super.) (citing *Shrewsbury*, 160 A.3d at 478).

*Sheriff's Sale and Discharge of the Mortgage*

Title 10 Section 4985 of the Delaware Code provides that a sheriff's sale discharges all liens against the subject property except mortgages which are "prior to any general liens." White argues that the Burnbrae sheriff sale discharged the Mortgage because Burnbrae held the superior lien against the Property.

The 1987 Burnbrae Declaration created Burnbrae's right to a lien in the event Yarborough became delinquent in her payments to Burnbrae. The parties do not dispute that the Burnbrae lien only came into existence when Yarborough became delinquent in her payments to Burnbrae. Plaintiff supplied evidence that Yarborough was current in her Burnbrae payments at the time the Mortgage was created and perfected in October 2007.[21] White has not disputed this fact.[22] Thus, the Burnbrae lien was created sometime after the perfected Mortgage, and not recorded until June 6, 2011.

Plaintiff argues that because the Mortgage was earlier in both time and notice than the Burnbrae lien, the Mortgage was the superior lien at the time of the sheriff's sale. White does not argue that the Burnbrae lien predated the Mortgage in time or notice by virtue of the 1987 Declaration, but rather, that the Burnbrae

---

[21] *Id.* at 2–3, Ex. C (HUD-1 Settlement Statement).

[22] Although White suggests that Yarborough was not current as early as October 1, 2008, he does not assert that she was delinquent in her payments as of the creation and recording of the Mortgage. *See* Def.'s Supp. Br. at ¶ 2.

7

lien *became* the superior lien by operation of law when Burnbrae recorded its lien on June 6, 2011.

White relies on the Delaware Uniform Common Interest Ownership Act ("DUCIOA").[23] DUCIOA Section 81-316(a) gives Common Interest Communities ("CIC"), such as Burnbrae, a statutorily-created lien for unpaid assessments or condominium fees.[24] Section 81-316(b)(ii) provides that such statutorily-created liens are subordinate to: "a first or second security interest on the unit recorded *before the date on which the assessment sought to be enforced became delinquent....*"[25]

Nevertheless, White argues that Section 81-316(b) confers "super-priority" status on Burnbrae's lien. White bases his argument on an exception in Section 81-316(b), which provides that a CIC delinquency assessment lien "*shall have priority* over the security interests described in paragraph (ii)" if the CIC records "a document" and a statement of lien.[26] Thus, White contends that Section 81-316(b)

---

[23] 25 *Del.* C. § 81-101 et. seq.
[24] *Id.* § 81-316(a):

> The association has a statutory lien on a unit for any assessment levied against that unit or fines imposed against its unit owner....If an assessment is payable in installments, the lien is for the full amount of the assessment from the time the first installment thereof becomes due. *Id.*

[25] *Id.* § 81-316(b)(ii).
[26] *Id.*

8

automatically conferred priority status to Burnbrae's lien when Burnbrae recorded its Notice of Lien in 2011.

Section 8-316(b) also provides that "*[e]xcept as otherwise provided in the declaration*, a lien under this section is prior to all other liens and encumbrances on a unit....".[27] The Burnbrae Declaration clearly provides that the Burnbrae lien *is subordinate* to a mortgage created and recorded prior to delinquency.[28] Likewise, the Burnbrae Notice of Lien clarifies that the Burnbrae lien is *not* a priority lien *unless* a superior lienholder forecloses on the Property:

> **PRIORTY LIEN\***: $1,350.00 (\*pursuant to 25 *Del.* C. § 81-316(b)(ii), *if/when a first or second security interest lienholder forecloses upon this condominium unity*, Burnbrae Mainatenance Association has super-lien priority for up to six months of common expense assessments).[29]

Here, it was the CIC Burnbrae that brought the foreclosure sale, *not* the superior lienholder. Thus, pursuant to the Notice of Lien, Section 81-316(b)(ii) would not apply.

Burnbrae's actions also evidence that Burnbrae did not intend to foreclose on the Property pursuant to Section 81-316: (1) Burnbrae did not assert in its

---

[27] (emphasis added).
[28] Pl.'s Supp. Br. at 1, Ex. 1 at 9–10 (Burnbrae Declaration) (providing that the Burnbrae lien "shall be subordinate to any lien...of a first mortgage recorded prior to the date of the delinquent assessment....").
[29] *Id.* at 4, Ex. D (Burnbrae Recorded Notice of Lien) (emphasis added).

pleadings that it was foreclosing pursuant to its DUCIOA priority lien; (2) the Notice of Lien shows that Burnbrae interpreted Section 81-316 to confer priority on Burnbrae's lien only in the event a superior lienholder foreclosed on the Property;[30] and (3) Burnbrae did not bring an equitable foreclosure in the Court of Chancery, as required under Section 81-316(j)(1).[31]

The Mortgage preceded the Burnbrae lien in both time and notice. Burnbrae's Notice of Lien Section 8-316 conferred priority only in the event a superior lienholder foreclosed on the Property. The Burnbrae Declaration explicitly provided that its lien was subordinate to a first-in-time mortgage. Burnbrae did not follow the Section 81-316(j) procedures. Thus, even if Section 8-316 would have conferrred "super-priority" lienholder status on Burnbrae, Burnbrae did not foreclose on the Property pursuant to Section 8-316. Therefore, the Court finds that Section 8-316 is inapplicable, and the sheriff's sale of the

---

[30] Plaintiff argues that the purpose of DUCIOA's super priority lien status conferred on CICs *under certain circumstances* is intended to limit any losses a CIC would incur as a result of a senior mortgage holder's foreclosure. In addition to evidence that Burnbrae interpreted Section 18-316 as a "shield rather than a sword for Burnbrae," Plaintiff notes that mortgage lenders are subject to heightened standards of notice, CFPB standards and regulations, the mandatory foreclosure mediation program, and other significant procedural differences. Pl.'s Supp. Br. at 5–6 (citing 10 *Del.* C. §§ 5062A–5062C).

[31] Burnbrae is a "condominium or planned community" under 25 *Del.* C. Section 81-316(j)(1). Pursuant to Section 81-316(j)(1), a condominium or planned community seeking to foreclose on a Section 81-316 lien, "must" foreclose "by equitable foreclosure." *Id.* White notes that Section 81-316(j) allows execution of foreclosure "upon other lawful procedures provided for in the declaration...." *Id.* Defendant does not refer to any "other lawful procedures" provided in the Declaration, and Plaintiff asserts that the Declaration provides no such "other lawful procedures." Pl.'s Supp. Br. at 6.

Property did not discharge the Mortgage because it was superior to the Burnbrae lien.

## CONCLUSION

The Court finds that Plaintiff has satisfied Title 10 Section 3901 of the Delaware Code, and Defendant White has failed to file an Affidavit of Defense stating any cognizable defenses. Additionally, the sheriff's sale did not discharge the Mortgage. **THEREFORE**, Plaintiff's Motion for Summary Judgment is hereby **GRANTED**, and judgment *in rem* shall be entered against Defendant White.

The Court finds that Plaintiff has satisfied Title 10 Section 3901 of the Delaware Code, and Defendant Yarborough has not entered an appearance in this case, despite personal service. **THEREFORE**, Plaintiff's Motion for Default Judgment is hereby **GRANTED**, and judgment on the Mortgage shall be entered against Defendant Yarborough.

**IT IS SO ORDERED.**

The Honorable Mary M. Johnston